IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHANE ROBINSON,                                   CASE NO. 2:10-CV-0503

      Petitioner,

v.                                                JUDGE MICHAEL H. WATSON
                                                  **Magistrate Judge Kemp**

WARDEN, MANSFIELD CORRECTIONAL
INSTITUTION,

      Respondent.

REPORT AND RECOMMENDATION
AND ORDER

      Petitioner, a state prisoner, has filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the petition, Respondent's return of writ, the exhibits of the parties, and petitioner's motion to dismiss or stay.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the motion to dismiss or stay be denied and that the claims raised in grounds one through four of the petition be dismissed.  It is further **ORDERED** that respondent file a supplemental  return of writ addressing the claims raised by petitioner in grounds five and six of the petition.

## I.  PROCEEDINGS IN THE STATE COURTS

      This action involves petitioner's February 10, 2005, conviction (after a jury trial held in the Jefferson County Court of Common Pleas) on charges of aggravated murder, complicity to commit aggravated murder, murder, complicity to commit murder, felonious assault, and complicity to commit felonious assault, all accompanied by firearm

specifications.  According to the state court indictment (Return of Writ, Exhibit One), petitioner murdered one Alfie Jermaine Wade, also known as "Spanky," on August 28, 2001, and aided and abetted another person, Kelly Carter, in that murder.

Petitioner pleaded not guilty at his arraignment and went to trial on the indictment. After the jury returned its verdict, petitioner was sentenced to life in prison without the possibility of parole for twenty years on the aggravated murder counts, plus three additional years for the firearm specification on those counts, and to another life term, with the possibility of parole after fifteen years, plus a three-year term for the firearm specification, on the murder counts.  He was given an additional eleven year sentence on the remaining counts of conviction.  All of these sentences were run concurrently, resulting in a total sentence of life in prison without the possibility of parole for twenty-three years.

Through counsel, petitioner appealed his conviction to the Ohio Court of Appeals for the Seventh Appellate District.  He raised nine assignments of error before that court. In a decision dated July 5, 2007, the court overruled all of his assignments of error and affirmed his conviction and sentence.  *See State v. Robinson*, 2007 WL 1976578 (Jefferson Co. App. July 5, 2007).  The Supreme Court of Ohio did not accept his appeal of that decision, finding that it did not involve any substantial constitutional question.  *See State v. Robinson*, 116 Ohio St.3d 1440 (2007)(Table); *see also* Return of Writ, Exhibit 12.

While his appeal was pending, petitioner, also acting through counsel, filed a petition for post-conviction relief pursuant to Ohio Revised Code §2953.21.  He raised a number of claims relating to ineffective assistance of trial counsel.  The trial court, after

2

holding a hearing on the claims, overruled the petition on May 25, 2007.  That order was also affirmed by the Seventh District Court of Appeals.  *See State v. Carter, et al.*, 2008 WL 5228925 (Jefferson Co. App. December 15, 2008), and the Ohio Supreme Court did not accept petitioner's appeal of that decision, either, declining to do so in an entry filed on June 3, 2009.  *See* Return of Writ, Exhibit 25.

## II.  THE FACTS OF THE CASE

The facts of this case are set forth in the Seventh District Court of Appeals' decision in *State v. Robinson*, 2007 WL 1976578, *1 (Jefferson Co. App. July 5, 2007).   That court recited the facts as follows.

> {¶ 2} On August 5, 2001, Xuan Sayles broke into Robinson's apartment, beat Robinson's stepfather, Vernon Thurman, shot Robinson's brother, Shiraz, and robbed the apartment. Xuan Sayles is a cousin of Terrell Sayles and [Aflred] Wade [Jr., the victim].  Robinson was upset about the robbery and the assault on his brother and he and his friend, Kelly Carter, believed that Terrell and Wade either had something to do with the robbery or had some form of control over Xuan. During the course of the month of August 2001, many people witnessed a rising in tensions between these two groups and on many occasions, Robinson and Carter stated that they wanted both to be repaid for what they lost in the robbery and revenge for the shooting of Robinson's brother.

> {¶ 3} On August 27, 2001, Robinson and Carter were at a bar in Steubenville, Ohio, the Safari Lounge, with a group of their friends. Wade was also at the Safari Lounge with a group of his friends. Robinson and Carter left the Safari Lounge before Wade and a mutual friend warned Wade that he had a feeling that Carter and Robinson may do something bad that night. When Wade drove home in the early hours of August 28, 2001, he was met by Carter and Robinson. He got into an altercation with them and they shot him multiple times. Wade was dead by the time emergency medical personnel responded to the scene.

> {¶ 4} There were three eyewitnesses to the shooting, Demetrius Birden, a

cousin of Wade's who was later murdered in an unrelated incident, Carl Williams, and Tina, an unidentified Caucasian girl. Williams, a convicted felon who was testifying in an attempt to cooperate with federal authorities, testified that he saw the entire altercation in front of Wade's home.

### III.  THE HABEAS CORPUS PETITION

Petitioner filed his petition in this Court on June 3, 2010.  The Court has found his filing to be timely.  Opinion and Order of June 25, 2010 (Doc. #8).  The petition raises the following claims:

**GROUND ONE**: **When the state court admitted a search warrant and affidavit containing hearsay, I was denied my right to confront the witnesses against me. Consequently, I am being held in violation of my right to a fair trial and due process of law under the Sixth and Fourteenth Amendments to the United States Constitution.**

Supporting facts:  The State submitted and the trial court introduced an Affidavit for a Search Warrant and Inventory Receipt, which contained prejudicial, inadmissible information regarding (1) a prior conviction, (2) an unrelated drug investigation, (3) and statements from Tomeka Smith, and (4) the officer's testimony.  Further, I was prevented from fully questioning the State's only eyewitness, Carl Williams, about his federal charges, which led to his testimony in my case.

**GROUND TWO: When the state court permitted witness testimony that did not conform to Ohio Evidence Rules 401, 403, 404(B), and 602, I was denied my right to a fair trial and due process of law.  Consequently, I am now being held in violation of those rights and the Fifth, Sixth, and Fourteenth Amendments to the United States**

4

Constitution.

Supporting facts:  Numerous witnesses were allowed to testify about unrelated incidents involving my and my codefendant's possession of firearms, in order to show that I had a propensity to carry (and use) firearms or that I had a violent nature.  The court also improperly allowed the State to argue that witnesses for the defense had been paid for testimony.

**GROUND THREE: The Prosecutor's misconduct denied me a fair trial and my right to the due process of law.  Consequently, I am held in violation of those rights and the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.**

Supporting facts: The prosecutor improperly remarked about a defense witness who did not show up for the final day of trial, after she had already testified.  He also improperly alleged that a defense witness was paid for her testimony, and introduced a rebuttal witness to further that improper argument.  Finally, the prosecutor, in closing, argued facts not in evidence, made derogatory remarks toward me and my codefendant, interjected his personal belief, and insinuated that defense counsel had suborned perjury.

**GROUND FOUR: When the jury considered information outside of the record during deliberations, I was denied my right to be tried by an impartial jury that would consider only information raised at trial.  Consequently, I am being  held in violation of my rights to a fair trial and an impartial jury under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution**.

Supporting facts: The jurors improperly implied my guilt from concerns over a

5

juror's personal safety after recognizing Blake Thompson, a defense witness.  That information was brought to the court's attention through a juror question.

**GROUND FIVE: When my trial attorney (1) represented both myself and my codefendant, Kelly Carter, (2) failed to seek severance of defendants, (3) failed to object to other acts and hearsay evidence, (4) failed to request limiting instructions, (5) failed to request an instruction for a lesser included offense, and (6) failed to object to the prosecutory's improper closing argument, he provided constitutionally ineffective assistance.  Consequently, I am now  held in violation of my right to the effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution**.

Supporting facts: Trial counsel represented both Kelly Carter and myself at a joint trial.  Trial counsel did not request severance on my case from my codefendant's, despite a plea offer in his case and statements of my codefendant that were improperly used against me at trial; that my codefendant wanted to kill everyone in the victim's circle of friends, was angry about the shooting of my brother, and wanted to get even.  My trial counsel failed to request an instruction on the lesser included offense of voluntary manslaughter.  The other claim relater (sic) to trial counsel's failure to object to the fact noted in the prior grounds.

**GROUND SIX: When the State failed to disclose an agreement (1) to nolle prosequi the pending criminal charges of the only eyewitness in my case and (2) to provide a letter to that eyewitness' federal sentencing judge in exchange for cooperation**

6

**and testimony my (sic) another criminal case, the State violated its obligation to disclose discoverable material and violated my due process rights.  Consequently, I am now held in violation of my due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.**

Supporting facts: The prosecutor provided a letter to the trial court explaining that an agreement existed between the State and Carl Williams to drop his local charges in exchange for his favorable testimony in Mr. Robinson's case and, Mr. Williams' guilty plea and prison sentence in his federal case.  Officer Hanlin's testimony impeached the prosecutor's testimony.  The prosecutor had testified, that he planned to nolle prosequi Mr. Williams' charges because he could not be successfully prosecuted.

Respondent concedes that the petition is timely.  However, respondent argues that all of ground one, and portions of grounds two and three, have been procedurally defaulted.  Respondent also contends that all of petitioner's claims are without merit, although the return appears not to address grounds five and six.

### IV.  THE MOTION TO DISMISS OR STAY

Before turning to the issues raised by the petition and the return, it is first necessary to address petitioner's motion to dismiss or stay.  In that motion, petitioner indicates that, upon obtaining a transcript of his sentencing hearing, he learned that his sentence failed to comply with Ohio law, specifically Ohio.R.Crim P. 32(C).  Consequently, he asked this Court to dismiss his petition without prejudice or, alternatively, to stay these proceedings so that he may pursue additional state court action in an attempt to have his sentence

7

vacated and obtain a new sentencing hearing. *See Motion for Dismissal or Stay.*  On December 15, 2010, petitioner filed a "Motion to Proceed to a Final Judgment and Issue a Judgment Entry that Complies with Ohio Criminal Rule 32(C)" in the Jefferson County Court of Common Pleas raising this issue   He appears to contend in that motion that the sentencing entry was defective because it did not reflect the merger of offenses of allied import even though the trial judge stated at the sentencing hearing that he could only impose concurrent sentences on the counts of conviction because all of them arose out of a single animus. *See Petitioner's Reply.*   According to the website maintained by the Jefferson County Court of Common Pleas, that motion is still pending. *See* http://www.jeffersoncountyoh.com/CountyCourts/CommonPleas.aspx (accessed on July 14, 2011).

Respondent opposes Petitioner's request, arguing that none of the claims now raised in Petitioner's habeas corpus petition remain unexhausted, that any attempt to amend the petition to include a new claim would be time-barred, and that Petitioner is not entitled to a stay under *Rhines v. Weber*, 544 U.S. 269 (2005).  Respondent is correct that a stay would not be appropriate here.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") advances the States' significant interest in the finality of criminal convictions. Stays undermine finality and the AEDPA's provisions that encourage prisoners to timely present all of their federal claims to the state court at the earliest opportunity. *Rhines v. Weber,* 544 U.S. at 277-78.  Stays should be used sparingly. They should not be granted when the unexhausted grounds are

8

plainly meritless. 544 U.S. at 278. Further, before a court can stay a habeas corpus action, the petitioner must demonstrate good cause for having failed to exhaust his state court remedies. *Id.* Nonetheless,

> it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Id.; see also Griffin v. Rogers,* 399 F.3d 626, 632-33 (6th Cir.2005) (citations omitted); *Palmer v. Carlton,* 276 F.3d 777, 781 (6th Cir.2002).

Here, the record fails to reflect either good cause for Petitioner's delay or that his claim is potentially meritorious. Petitioner contends that his sentence fails to comply with state law; however, this claim does not raise an issue of federal constitutional magnitude. Further, because Petitioner's claim is readily apparent from the face of the record and should have been raised on direct appeal, but was not, the claim may be barred from review under Ohio's doctrine of *res judicata. State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry,* 10 Ohio St.2d 175 (1967). Because his claims are likely barred from review, they are not potentially meritorious as that term is defined under *Rhines v. Weber*, *supra*, and a stay of this proceeding would not be warranted for petitioner to pursue a motion that has little, if any, likelihood of success. *See Williams v. Thaler*, 602 F.3d 291 (5th Cir. 2010) ("[W]hen a petitioner is 'procedurally barred from raising [his] claims in state court,' his 'unexhausted claims are 'plainly meritless.'"), citing

*Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005); *see also Carter v. Friel*, 415 F.Supp.2d 1314, 1321-22 (D.Utah 2006); *Scott v. Sheldon*, 2009 2982866 (N.D. Ohio September 11, 2009)(same), citing *Neville v. Dretke, supra*; *See also Sieng v. Wolfe*, 2009 WL 1607769, *7, Case No. 2:08-cv-0044 (S.D. Ohio Jun. 9, 2009); *Bailey v. Eberlin*, 2009 WL 1585006, *7 Case No. 2:08-cv-839 (S.D. Ohio Jun. 4, 2009).   Whatever the outcome, the filing of this particular state court motion is not a reason for this Court to stay proceedings here.

Petitioner's motion did request a dismissal without prejudice as an alternative to a stay.  That request assumes that the state court will adopt a new sentencing entry, that petitioner will then be permitted to take a new appeal, and that the statute of limitations will not begin to run again until that appeal is concluded.  But it seems likely that even if petitioner prevails on his motion to obtain a new sentencing entry, any of the issues which he has raised here and which he properly exhausted through a prior appeal or post-conviction proceeding will be barred from further review by the doctrine of *res judicata* based on the result of the prior appeal.  *See, e.g., State v. Triplett*, 2011 WL 1344577 (Lucas Co. App. April 8, 2011).  Thus, were the Court to grant a dismissal without prejudice, that would likely cause all of petitioner's claims to become time-barred.  The Court does not believe that petitioner desires that result, and respondent opposes it as well.  Therefore, his motion should be denied in its entirety.

## V.  PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional

rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. Id.; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that

11

there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

As noted above, petitioner's first claim relates to the introduction of a search warrant application which contains a significant amount of hearsay.  The court of appeals addressed this claim, which was raised on appeal, in the following way:

{¶ 8} In his first assignment of error, Robinson argues:

{¶ 9} "It was plain error for the trial court to admit into evidence the search warrant and affidavit which contained both highly prejudicial hearsay statements and inadmissible information not otherwise admitted during the course of the trial, thereby denying Appellant his right to confront the witnesses against him under the Sixth Amendment of the U.S. Constitution and Article I Section 10 of the Ohio Constitution."

{¶ 10} A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271. An abuse of discretion connotes more than an error of law or judgment, it implies the trial court acted unreasonably, arbitrarily, or unconscionably. *State v.. Adams* (1980), 62 Ohio St.2d 151, 157. Consequently, this court may not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131.

{¶ 11} In this case, Robinson objects to the admission of certain statements which were allegedly hearsay. However, Robinson did not object to the admission of these statements during trial. Accordingly, he has waived all but plain error. Crim.R.52(B); *State v. Jalowiec*, 91 Ohio St.3d 220, 226,

12

2001-Ohio-0026. An error is not a plain error "unless, but for the error, the outcome of the trial clearly would have been otherwise. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 97.

{¶ 12} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" and generally inadmissible unless an exception applies. Evid.R. 801(C); Evid.R. 802. However, the admission of hearsay does not violate the Confrontation Clause if the declarant testifies at trial since the defendant has the opportunity to confront the declarant on cross-examination. *State v. Keenan* (1998), 81 Ohio St.3d 133, 142, 689 1998-Ohio-0459, citing *California v. Green* (1970), 399 U.S. 149.

*3 {¶ 13} In this case, the admission of these statements did not violate Robinson's rights under the Confrontation Clause. The person who signed the affidavit, Detective John Stasiulewicz, testified at trial. Likewise, the hearsay within the affidavit which Robinson objects to are statements by Tomeka Smith, another person who testified at trial. Each of these people were subject to cross-examination at trial, which preserved Robinson's right to confront the witnesses against him.

{¶ 14} Furthermore, it does not appear that the trial court committed plain error by admitting some of the statements in the search warrant and affidavit, since these statements were cumulative of evidence which was properly introduced. However, much of the affidavit contained impermissible hearsay which was prejudicial to Robinson. For instance, the affidavit stated that Smith overheard Robinson say on the night of Wade's death that he was going to shoot Wade. It also stated that a confidential informant had purchased illegal drugs from Robinson's residence and gave some of his criminal history.

{¶ 15} Obviously, these statements are potentially prejudicial. However, we cannot conclude that the trial court committed plain error when it admitted this evidence. For reasons outlined in more detail below, the evidence against Robinson was convincing. Multiple witnesses testified that there were growing tensions between he and Wade prior to Wade's death, a witness overheard things from Robinson and Carter on the night in question which

13

made him warn Wade that something bad might happen that night, an eyewitness saw Robinson shoot Wade, and Robinson bribed a witness to testify on his behalf at trial. With all this evidence of Robinson's guilt, we cannot conclude that the exclusion of this improperly admitted evidence would alter the outcome of this case. Accordingly, the arguments in Robinson's first assignment of error are meritless.

*State v. Robinson*, 2007 WL 1976578, *2-*3.

It is clear from this discussion that although petitioner raised this issue on direct appeal, the state court of appeals conducted only a "plain error" review due to petitioner's failure to have objected, at the trial court level, to the admission of this evidence. That failure is a waiver of the right to assign the admission of such evidence as an error on appeal, as stated in numerous Ohio decisions. *See, e.g., State v. Williams,* 99 Ohio St.3d 439 (2003); *State v. Roberts*, 156 Ohio App.3d 352 (Summit Co. App. 2004); *see also* Ohio Evid. R. 103 (A)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection ...."  This rule is regularly enforced in the Ohio courts and constitutes an adequate and independent state law ground upon which to deny relief.

Respondent correctly notes that the fact that the Ohio appellate court reviewed this claim for "plain error" does not excuse the procedural default. *See, e.g., White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005)("we have held that the plain error review by the state court does not constitute a waiver of procedural default rules"), *citing Cooey v. Coyle*, 289 F.3d 882, 897 (6th Cir. 2002).  Consequently, the only way in which petitioner could avoid a

finding of procedural default is to show cause for the default and prejudice from it.  One possible basis for finding cause and prejudice is through the constitutionally-ineffective assistance of counsel.  *See, e.g., Murray v. Carrier*, 477 U.S. 478 (1986).  Such a claim must be independently raised, exhausted, and not defaulted in the state court before it can serve to excuse a procedural default, however.  *Edwards v. Carpenter*, 529 U.S. 446 (2000).

Here, in his post-conviction petition, petitioner did characterize his counsel's failure to object to the introduction of this evidence as an instance of ineffective assistance of counsel.  He appealed the denial of that petition to the Ohio court of appeals and the Ohio Supreme Court.  However, on appeal, the only instance of ineffective assistance of counsel which he argues was "[w]hether the Appellant was denied the ineffective assistance of counsel by trial counsel's failure to proffer evidence impeaching the credibility of the State's witness."  Return of Writ, Exh. 16, at 5.  That issue related to the cross-examination of prosecution witness Carl Williams.  Petitioner did not raise any issue concerning trial counsel's failure to object to the introduction of the search warrant application.  Thus, for purposes of federal habeas review, he waived this claim.  *See Nesser v. Wolfe*, 370 Fed. Appx. 665, 670 (6th Cir. March 25, 2010) (failure to appeal trial court's denial of claim raised in post-conviction petitioner is a procedural default because it is "an adequate and independent ground to deny relief").

The procedural default argument on portions of grounds two and three are similar.  As to each of these, respondent notes that petitioner's counsel did not object at trial to questions asked by the prosecuting attorney to defense witness Tracy Lawrence regarding

whether she got money from petitioner's co-defendant, Kelly Carter, and similarly did not object to questions asked to defense witness Brandy West about whether she had been bribed. The state appellate court refused to consider these arguments, even on plain error review, because no objection had been made at the trial. As the Court has already noted, that "contemporaneous objection" rule is a rule of regular application that can form the basis for a finding of procedural default.

As with petitioner's first claim, these failures on the part of trial counsel were raised in the petition for post-conviction relief. However, they were not part of his assignments of error on appeal from the trial court's denial of that petition, and, similarly to claim one, were waived for that reason.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case. Thus, claim one and those portions of claims two and three which were not raised as part of petitioner's appeal from the denial of his post-conviction petitioner are subject to dismissal on grounds of procedural default.

 Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also*

16

*Sawyer v. Whitley*, 505 U.S. 333 (1992).  After review of the record, the Court does not deem this to be such a case.  Thus, claim one and portions of claims two and three have been procedurally defaulted and may not be considered by the Court in the context of a habeas corpus petition.

## VI.  MERITS REVIEW

### A.  Ground Two

The remaining claims which form a part of ground two asserted in the petition relate to the introduction of evidence that petitioner and Kelly Carter possessed firearms on other occasions.  Petitioner asserts that this evidence was used to show a propensity either to carry firearms or to use violence, and that its admission was improper.

The state court of appeals dealt with this claim in the following way:

{¶ 52} In this case, the trial court presented repeated evidence of instances when Carter brandished a firearm. This is a form of character evidence. Character evidence is generally not admissible for the purpose of proving that a person acted in conformity therewith on a particular occasion. Evid.R. 404(A). Thus, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). This rule of evidence is in accord with R.C. 2945.59, which allows this kind of evidence to come in for particular purposes in a criminal case.

{¶ 53} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may

be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." *Id*.

{¶ 54} "The focus of the inquiry into the admissibility of other-acts evidence is whether the evidence is being offered for the impermissible purpose of proving that the accused acted in conformity with his or her criminal character in committing the charged offenses, or whether the evidence is being offered for another purpose." *State v. Pearson* (1996), 114 Ohio App.3d 168, 185. Because Evid.R. 404(B) and R.C. 2945.59 contain exceptions to the common-law rule that such other-acts evidence is inadmissible, both provisions must be construed strictly against the admissibility of such evidence. *State v. Broom* (1988), 40 Ohio St.3d 277, paragraph one of the syllabus.

{¶ 55} Evidence that a person carries a gun is the type of "other acts" evidence which is generally inadmissible since it portrays the person as a violent individual who regularly carried guns. *State v. Carusone*, 1st Dist. No. C-010681, 2003-Ohio-1018, at ¶ 30. However, this type of evidence is admissible if it is admitted for another purpose. *State v. Parrish* (1991), 71 Ohio App.3d 659, 666.

{¶ 56} Evidence that a defendant in a crime involving a firearm possessed a firearm at a point near in time to the crime is relevant to show that the person had an opportunity to use a firearm in the crime. *Parrish* at 666. Such evidence can also be used to prove motive, intent, preparation, and plan. *State v. Bruno*, 8th Dist. No. 77202, 2001-Ohio-4227.

{¶ 57} The State argues that Robinson opened the door to the admission of this type of evidence. But all of the testimony in this case regarding Carter's prior possession or non-possession of firearms, including that from Carter's brother, was elicited by the State. In this case, Robinson never opened the door to evidence of Carter's propensity for possessing firearms.

{¶ 58} Furthermore, this evidence was not relevant to the issue of Robinson's guilt. Carter's prior possession of a firearm could potentially show that he had an opportunity to murder Wade with such a weapon. However, it does not prove anything with regard to Robinson. Accordingly, it was error to

18

allow this evidence to be introduced against Robinson.

{¶ 59} Nevertheless, the trial court did not commit plain error when it allowed this evidence to be introduced. Although this evidence was irrelevant toward Robinson's guilt, it was highly relevant to prove Carter's guilt. Furthermore, the exclusion of this evidence did not likely affect the outcome of this case. Multiple witnesses testified about Robinson's motive for killing Wade, an eyewitness saw the killing, and the circumstances surrounding that killing indicate that it was premeditated. Accordingly, we cannot conclude that the trial court committed plain error by admitting this evidence in this case.

*11 {¶ 60} Robinson next argues that the trial court should have excluded evidence of his own prior brandishment of a firearm. However, this evidence was admissible for a permissible purpose. No firearm matching the one used to murder Wade was ever recovered. However, many bullets at the scene and within Wade were recovered. Numerous witnesses testified that they had seen Robinson with a firearm and that firearm matched the caliber of weapon which was used to kill Wade. Thus, this testimony established that Robinson had an opportunity to murder Wade with such a weapon. This testimony could also establish intent, preparation, or plan, since Robinson could arguably have been carrying the firearm in preparation for retaliation for the assault on his brother. Robinson's argument that this evidence should have been excluded is meritless.

*State v. Robinson*. 2007 WL 1976578 at *9-11.

The standard which the Court applies to this and other claims which are evaluated on their merits comes from the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under that statute, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. To that end, 28 U.S.C. § 2254(d) provides:

19

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(1) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States District Court for the Western District of Michigan has summarized this standard as follows:

[A] decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state court's adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Further, the federal habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.*

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006), *citing Williams v. Taylor*, 529 U.S. 362 (2000).

In his petition, petitioner presents this issue as one involving rights guaranteed to

20

him under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. However, in his brief filed in the state court of appeals, he argued the issue as one involving the introduction of evidence in violation of the Ohio Rules of Evidence, which is a state law claim, and did not cite to any federal cases or to any provision of the United States Constitution.  The same is true of his reply brief.  The state court of appeals analyzed the issue as one arising under state, not federal, law.

A fundamental problem with this claim is the fact that it was not presented to the state court as a federal constitutional claim.  A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). A federal habeas court does not function as an additional state appellate court reviewing  state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. *Id*. (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir.1985)).

Applying this rule to a similar situation where state law evidentiary rulings were presented to the state courts only as issues of state law, the Court of Appeals concluded, in *Dean v. Baker*, 38 F.3d 1215, *1 (6th Cir. 1994)(unreported table opinion) that "the district

21

court properly concluded that petitioner did not fairly present his claims to the Ohio courts."  Further, in this circuit, even if a claim that an evidentiary ruling violated the Due Process clause is presented as a federal constitutional claim, it is "the clearly established rule that errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding."  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).   Such a claim can be grounds for relief only if the state court's ruling offended a fundamental principle of justice and deprived the petitioner of a fundamentally fair trial.  *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000).  And this is a very narrow category.  *Dowling v. United States*, 493 U.S. 342, 352 (1989).

As respondent correctly points out, in *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), the Court of Appeals held that " [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  This Court has consistently followed that ruling. *See, e.g., Cowans v. Bagley*, 624 F.Supp. 2d 709, 802 (S.D. Ohio 2008), *aff'd* 639 F.3d 241 (6th Cir. 2011).  Thus, even if this claim had not been waived by petitioner's failure to present it to the state courts as a federal constitutional claim, it has no merit because the introduction of this evidence did not deprive petitioner of a fundamentally fair trial.

### B.  Ground Three

Ground three contains three separate claims of prosecutorial misconduct: (1)

remarks about a defense witness' failure to attend the last day of the trial, after she had already testified; (2) alleging and attempting to prove, through a rebuttal witness, that a defense witness was paid for her testimony; and (3) making various improper comments during the course of the closing argument.  No objection was made to the questioning of Brandy West about whether she had been paid, and the Court has held that any claim relating to such questioning was waived because it was not properly raised during the course of the state court proceedings.

As to the balance of this claim, which was petitioner's fourth assignment of error on his direct appeal to the Seventh District Court of Appeals, that court reasoned:

> {¶ 64} The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. *State v. Fears*, 86 Ohio St.3d 329, 332, 1999-Ohio-0111. In reviewing a prosecutor's alleged misconduct, a court should look at whether the prosecutor's remarks were improper and whether the prosecutor's remarks affected substantial rights of the appellant. *State v. Smith* (1984), 14 Ohio St.3d 13, 14-15. "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, at ¶ 61, quoting *Smith*, 455 U.S. at 219. An appellate court should not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 121. A failure to object to alleged prosecutorial misconduct waives all but plain error. *Hanna* at ¶ 77; *LaMar* at ¶ 126.

> *12 {¶ 65} Robinson argues the prosecutor committed misconduct in a variety of ways, which we address below.

> Witness Tampering
> {¶ 66} Robinson argues that the prosecutor committed misconduct by asking defense witnesses whether they had been bribed without having a basis for

23

such an accusation. During his cross-examination of defense witness Brandy West, the prosecutor asked if she had received any money from the defendants in exchange for her testimony. Robinson claims this question was improper because the State did not have a basis for asking it.

{¶ 67} Evid.R. 607(B) requires that "[a] questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact." Robinson never objected to the question to test whether the State had a reasonable basis for asking this question. Accordingly, we cannot conclude that the prosecutor's conduct in this regard was improper.

{¶ 68} The prosecutor also asked another defense witness, Daphne Birden, whether she had been bribed in exchange for her testimony. It then introduced the testimony of her former boyfriend, James Wrenn, who stated that Birden told him that Robinson had paid her for her alibi testimony. Robinson appears to claim that this was improper. However, evidence that tends to demonstrate the attempted bribery of a witness by a defendant is admissible against that defendant since such an attempt is an admission of guilt. *State v. Hunt*, 8th Dist. No. 84528, 2005-Ohio-1871, at ¶ 8. This evidence was clearly admissible against Robinson and his arguments to the contrary are meritless.

Birden's Failure to Appear for Rebuttal

{¶ 69} Robinson next argues that the prosecutor committed misconduct when it improperly discredited Birden's testimony in the eyes of the jury by highlighting the fact that she did not appear to testify on rebuttal in contravention of a court order that she do so. The prosecutor responds that, although he did not expect that Ms. Birden would be present at trial that day, he had every right to call her as a witness on rebuttal and that it was not misconduct for him to do so. Neither party has cited any case dealing with a similar fact pattern.

{¶ 70} In its cross-examination of Birden, the State asked her whether she received a certain phone call and whether she would be surprised if there was a recording of that phone call. After asking these questions, the prosecutor informed the trial court at a sidebar that it had a copy of this tape, but did not wish to play it at this time. Instead, the prosecutor stated that he

preferred to recall Birden on rebuttal and play the tape at that time. The trial court then excused Birden from the witness stand, but told her "I think you're going to be recalled. So, we need for you to stay," to which Birden replied, "Okay."

{¶ 71} At the end of the day, the prosecutor asked to ensure that the defense witness which he planned to call the next day in rebuttal knew that they should appear. The trial court asked if Birden was still present, since it had specifically told her to stay. Defense counsel informed the trial court that she was not in the hall and the prosecutor speculated that she must have left. The prosecutor asked the trial court if it felt that he should subpoena her to appear the next day, but the trial court answered that it did not believe that this was necessary. The prosecutor then told the trial court that he had four phone numbers he could use to contact Birden and that he would "track her down."

*13 {¶ 72} The next day, the State began its presentation of the evidence on rebuttal by calling Birden to the stand. The bailiff informed the trial court, in the jury's presence, that Birden was not present. At a sidebar, the prosecutor said he tried contacting Birden at the three phone numbers available to him, but that there was no answer at two of the numbers and no minutes available for the third number. The prosecutor then called his next witness.

{¶ 73} During closing argument, the prosecutor used Birden's failure to appear for rebuttal to impeach her testimony.

{¶ 74} "Daphne Birden, [defense counsel] didn't even mention her [during his closing argument]. You know why he didn't mention her? Because she didn't come back. She left and was told by the Judge to come back and she didn't even come back. Why? Because of the tape. I told her I was going to play it for her. Come back to listen to it. I guess she wasn't interested. Speaks volumes.

{¶ 75} "What people don't say is as important as the things they do say. What people don't do is as important as the things that they do. * * *

{¶ 76} "Daphne Birden doesn't seek the truth. She gets paid for the truth. Her

truth, whatever the price is, she must not have gotten paid enough. She could only tell half of the story."

{¶ 77} A prosecutor is encouraged to prosecute with earnestness and vigor. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, citing *Berger v. United States* (1935), 295 U.S. 78, 88. Nevertheless, there are limitations on what a prosecutor may do at trial. For example, prosecutors may not allude to matters not supported by admissible evidence in their closing argument. Id. The prosecutor in this case did just that. There was never any evidence before the jury that Birden disobeyed the trial court's order by not returning to be called as a rebuttal witness. Likewise, there is no evidence that the prosecutor told Birden he was going to play the tape. The prosecutor used these facts, which were not based on admissible evidence, to directly attack Birden's credibility. The prosecutor in this case committed misconduct when making this argument to the jury.

{¶ 78} Nevertheless, Robinson cannot show that he was prejudiced by this misconduct. There was a second reason to doubt Birden's testimony, Wrenn's testimony that Robinson bribed Birden. This ground alone is enough to seriously doubt Birden's credibility and was mentioned by the prosecutor during his closing argument. Accordingly, the prosecutor's remarks in this case regarding Birden's failure to appear for rebuttal were not enough, on their own, to require a reversal. Robinson's arguments to the contrary are meritless.

Closing Argument

{¶ 79} Robinson contends that much of the State's closing argument consisted of a deliberate attempt to appeal to the jury's emotions, repeated interjection of the prosecutor's personal opinion, repeated references to facts outside the record, and denigration of defense counsel.

*14 {¶ 80} When reviewing the statements a prosecutor makes during closing argument for prosecutorial misconduct, the Ohio Supreme Court has instructed appellate courts to give prosecutors "a certain degree of latitude in summation. The prosecutor may draw reasonable inferences from the evidence presented at trial, and may comment on those inferences during closing argument. We view the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial." (Citations omitted) *State v. Treesh*, 90 Ohio St.3d 460, 466, 2001-Ohio-0004.

26

{¶ 81} Despite the fact that prosecutors are encouraged to argue fervently for conviction, *see State v. Stephens* (1970), 24 Ohio St.2d 76, 82, a prosecutor cannot express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. *State v. Smith* (1984), 14 Ohio St.3d 13, 13-14. Furthermore, a prosecutor cannot go beyond the evidence which is before the jury when arguing for a conviction. Id.

{¶ 82} Robinson argues that the prosecutor's entire closing argument was designed to appeal to the juror's emotions, but a review of the entire argument does not support this contention. The prosecutor certainly began and finished his closing argument with references to the loss that Wade's family suffered. However, the bulk of the closing argument is based on the evidence introduced at trial and the prosecutor's inferences from that evidence. "[A] conviction based solely on the inflammation of fears and passions, rather than proof of guilt, requires reversal." *State v. Williams* (1986), 23 Ohio St.3d 16, 20. But "[r]ealism compels us to recognize that criminal trials cannot be squeezed dry of all feeling." *State v. Keenan*, 66 Ohio St.3d 402, 409. The prosecutor did not excessively appealed to the jury's emotions with his references at the beginning and end of his argument.

{¶ 83} Robinson next contends that the prosecutor improperly expressed his personal belief or opinion numerous times and made numerous references to facts outside the record. However, a prosecutor is permitted to make reasonable inferences from the evidence and many of these instances are nothing more than inferences from the evidence. *See Treesh* at 466. For instance, the prosecutor told the jury, "I know what happened in this case." However, he followed this up by explaining that he and the jury knew what happened because they had all heard the testimony. Clearly, the prosecutor's statement was an inference based on the evidence.

{¶ 84} Similarly, the prosecutor referred to Robinson as someone who kills people. But this statement does not indicate that the prosecutor has knowledge of facts outside the record. Instead, it shows that he reached this conclusion based on the evidence in this case.

{¶ 85} Finally, Robinson complains about the references to him and Carter being drug dealers. However, a witness testified that Carter and Robinson were angry because drugs were stolen in the robbery of Robinson's brother. And the State's whole case was based on the theory that Robinson and Carter

sought revenge on Wade because of that robbery. The prosecutor's comments were merely inferences from evidence in the record.

*15 {¶ 86} Other examples of this type of prosecutorial misconduct which Robinson cites, such as the feelings of people on the street, speculation about whether Robinson and Carter planned the shooting before it occurred, and speculation on exactly what occurred at the scene of the crime, are more obviously examples of inferences based on the evidence.

{¶ 87} Finally, Robinson maintains that the prosecutor improperly denigrated defense counsel in his closing argument. This argument is baseless. During trial, a witness testified that he saw a defense witness receive money from Robinson shortly after that defense witness spoke to defense counsel. The prosecutor's recitation of these facts at closing argument is proper and does not denigrate counsel since it does not infer that counsel knew or approved of the alleged bribes.

{¶ 88} Robinson's arguments concerning the prosecutor's comments during closing statements all are meritless.

As this Court explained in *Sowell v. Collins*, 557 F.Supp.2d 843, 911 (S.D.Ohio 2008),

The appropriate standard of review for claims of prosecutorial misconduct on a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). For prosecutorial misconduct to rise to the level of a constitutional violation, the conduct of the prosecutor must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir.2006) (quoting Donnelly, 416 U.S. at 643, 94 S.Ct. 1868); see also Darden, 477 U.S. at 181, 106 S.Ct. 2464. Thus, "Petitioner's burden on habeas review is quite a substantial one." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir.2000).

When analyzing a claim of prosecutorial misconduct, a federal court must first determine whether the challenged statements were improper. *Boyle v.*

> *Million*, 201 F.3d 711, 717 (6th Cir.2000). If improper, the court must examine
> whether the statements were so flagrant as to constitute a denial of due
> process and warrant the granting of a writ. Even if the prosecution's conduct
> was improper, or even "universally condemned," a federal court can only
> reverse a conviction or sentence if the statements were so flagrant as to
> render the entire trial fundamentally unfair. *See e.g., Slagle v. Bagley*, 457 F.3d
> 501, 516 (6th Cir.2006). A court makes that determination by considering the
> following four factors: (1) the likelihood that the remarks of the prosecutor
> tended to mislead the jury or prejudice the defendant; (2) whether the
> remarks were isolated or extensive; (3) whether the remarks were
> deliberately or accidentally made; and (4) the total strength of the evidence
> against the defendant. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.2005); *see also*
> *Bowling v. Parker*, 344 F.3d 487, 512–13 (6th Cir.2003). Relief will not be
> granted unless the conduct of the prosecutor "likely had a bearing on the
> outcome of the trial...." *Byrd*, 209 F.3d at 530.

Under this substantive legal standard, the Court cannot conclude that the state appellate

court's determination of this issue was unreasonable. The standards identified by the state

court, while derived from Ohio decisions, are similar to the federal constitutional standards

identified in *Sowell v. Collins*. The focus of both tests is, assuming that the prosecutor did

engage in some questionable or even clearly prohibited misconduct, how those actions

affected the overall fairness of the trial, and the likelihood, or unlikelihood, that the

remarks in question prejudiced the petitioner in light of the strength of the evidence that

he committed the crimes charged.

The Court begins with the prosecutor's statement, during closing argument, that

defense witness Daphne Birden disobeyed a court order to come back to court on the last

day of trial so that she could be recalled by the prosecutor. The state court of appeals

acknowledged that this statement was improper because there was no evidence before the

jury to support it.  This Court will similarly presume the impropriety of this statement, and proceed to the next steps of the analysis mandated by *Bates v. Bell, supra.*

Once the Court has found prosecutorial misconduct, it must be determined if that misconduct was intentional and prejudicial.  The state court made no finding about whether this particular instance of misconduct was intentional, but it can reasonably be inferred that it was, because the prosecutor was clearly aware that the jury had not been privy to the conversation at sidebar concerning recalling Ms. Birden as a witness. Consequently, the key issue is whether the statement was prejudicial - or, in the context of reviewing a state court decision under the AEDPA's deferential standard, whether the state appellate court's determination that it was not prejudicial was an unreasonable application of federal law.

Factually, the state court found that there was other evidence introduced which called into question the credibility of Ms. Birden's testimony, and particularly whether it had been procured through bribery.  As one of it's a rebuttal witnesses, the state called James Wrenn.  Mr. Wrenn testified that he knew both Daphne Birden and her sister Michelle Harris.  He said that he had taken Ms. Birden to petitioner's apartment shortly before the trial and that both she and her sister disappeared into another room with petitioner.  When he and Ms. Birden left, she had $470.00 in cash and commented that she "got paid good for doing this."  (Trial transcript, Vol. VIII, at 1341).

Ms. Birden's testimony, as a defense witness, was to the effect that she had seen Carl

Williams in Chicago during the month of August, 2001, when the murder took place, and that her brother, whom Mr. Williams claimed to be with on the night of the murder, was also in Chicago rather than Steubenville at that time.  As noted by the state court of appeals, Mr. Williams claimed to have been an eyewitness to the murder itself, and he testified for the prosecution.  He was certainly a significant witness because of the other two people he was with that night, at least according to his testimony concerning his companions, one (Ms. Birden's brother) had died prior to trial, and the other could not be located.  Evidence that he was not in Steubenville on the night in question would have been very helpful to the petitioner's case.

Notwithstanding the important nature of Ms. Birden's testimony, the Court agrees that a reasonable jurist could have reached the conclusion that the prosecutor's attempt to discredit her by referring to her failure to attend court on the last day of the trial was not so prejudicial as to require reversal.  First, it may well be that the comment by the trial judge to Ms. Birden to the effect that she would be recalled was heard by the jury, since it does not appear in the transcript as part of a sidebar conference.  *See* Trial Transcript, Vol. VII, at 1236.  Second, the evidence that she took money from petitioner for her testimony - especially when she also told the jury, under oath, that she had not seen petitioner for many months prior to the trial - was far more devastating to her credibility than the comments about her failure to come back to be recalled as a witness.  Thus, the remarks in question were not likely to deceive or mislead the jury on the issue of Ms. Birden's credibility.  Third, Ms. Birden did not specifically state that she saw Mr. Williams in

31

Chicago on the exact date at time in question; rather, her testimony was more general, consisting of a statement that she saw Mr. Williams "every day" while she was in Chicago and she was there in July and August, 2001.  (Trial transcript, Vol. VII, at 1208).  By contrast, Mr. Williams described the events of that night in great detail.  Consequently, her testimony did not have a tremendous amount of probative value to begin with.  Finally, she was not the sole witness to testify about Mr. Williams' or her brother's not having been in Steubenville in August of 2001; most of the defense witnesses said the same thing.  An attack on her credibility was not the equivalent of an attack on the credibility of all of the witnesses who could not place Mr. Williams in Steubenville at the time of the murder, and did not deprive the defense of its ability to argue that he was not there.  Given all of this, it is reasonable to conclude that this particular instance of misconduct was not "so egregious as to render the entire trial fundamentally unfair," *see Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979), and that the state court's determination to that effect is one to which this Court must give due deference.  As a result, his particular component of the prosecutorial misconduct claim does not provide a basis for granting petitioner any relief.

Petitioner also claims that, apart from his comments about Ms. Birden's failure to appear on the last day of trial, the prosecutor acted improperly in suggesting that she had been bribed, and by calling Mr. Wrenn as a rebuttal witness to support that claim.  The state court rejected this claim because evidence that a witness was paid for her testimony is relevant to credibility and there was nothing improper about the prosecutor's attempts to discredit her in that way, especially when Mr. Wrenn provided direct testimony about

the bribe.  Thus, the state court did not engage in any further analysis because it found no misconduct.

In his appellate brief, petitioner argued that the prosecutor acted improperly because he represented to the court that Mr. Wrenn actually saw Ms. Birden receive the money from petitioner, whereas he then testified that the money changed hands in another room and out of his sight.  Regardless of how the prosecutor explained the relevance of the testimony to the trial judge - and his comment that "he saw it happen," Trial Transcript, Vol. VIII, at 1340, is not entirely clear as to exactly what it is that Mr. Wrenn saw - the testimony was clear concerning the extent of Mr. Wrenn's knowledge.  His testimony was circumstantial evidence of the payment of a bribe, but it permitted the jury to draw an inference that the reason Ms. Birden came away from her meeting with petitioner with money in her hand was that she was being paid for her testimony.  It was therefore not unreasonable for the state court of appeals to find that the prosecutor did no more than offer and comment upon admissible evidence to the effect that a bribe had been paid, and he did not act improperly in doing so.

The final instance of prosecutorial misconduct which petitioner alleges is, as the court of appeals characterized it, the claim that "much of the State's closing argument consisted of a deliberate attempt to appeal to the jury's emotions, repeated interjection of the prosecutor's personal opinion, repeated references to facts outside the record, and denigration of defense counsel."  *State v. Robinson*, 2007 WL 1976578, *13.  The court acknowledged that the summation included some appeal to the jurors' emotions,

particularly with reference to the loss suffered by the victim's family, but that such references were not excessive.  The court also viewed the prosecutor's references to petitioner and his co-defendant as drug dealers and killers as argument from evidence in the record, as opposed to statements made on the basis of evidence that only the prosecutor might have been aware of, and it rejected his claim that defense counsel was unduly denigrated in closing argument concerning the alleged bribery of witnesses because the prosecutor "did not infer that counsel knew or approved of the alleged bribes."  *Id*. at *15.

Again, the Court is mindful that under the AEDPA, the state court's conclusion that the closing argument, taken as a whole, was not improper in any of these respects is to be given deference, and this Court may not substitute its judgment for that of the state court unless the state court unreasonably applied controlling federal law in reaching its conclusion.  The Court has reviewed the entire closing argument, *see* Trial Transcript, Vol. VIII, and cannot find the state court's decision to be unreasonable.  There were only two brief references to the impact that the murder had on the victim's family at the beginning of the argument, and petitioner's counsel did not object to them.  The reference to the defendants as drug dealers was at least somewhat grounded in the evidence that the killing was done as revenge for a drug-related robbery.  Further, that comment was a very small part of a long closing argument that focused mainly on the evidence and the credibility of the witnesses.  The Court also agrees that there was no effort made to suggest,  nor would the jury likely have inferred, that defense counsel was in any way involved in the alleged payments to witnesses. Using the appropriate standard from *Bates v. Bell*, the Court cannot

34

find that any of these statements - even if the ones relating to the victim's family were marginally improper - were flagrant or pervasive, nor were they unduly prejudicial.  The jury was properly asked, for the most part, to decide the case based on the evidence and not on improper factors such as sympathy or prejudice.

The Supreme Court has made it clear that improper comments during argument cannot be taken in isolation, but "must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial."  *United States v. Young* 470 U.S. 1, 11 (1985).  Viewing these isolated remarks by the prosecutor in the context of the entire trial, it is not unreasonable to conclude that they had little or no effect on the fairness of the trial, and certainly not enough to require reversal. Consequently, the Court finds no merit in any of petitioner's claims of prosecutorial misconduct.

### C.  Ground Four

Ground Four of the petition (which is referred to in the return as ground five) raises an issue about juror misconduct.  The state court of appeals explained the issue this way:

{¶ 91} In this case, a juror informed the trial court during deliberations that he was uncomfortable with the possibility of a guilty verdict since he knew a defense witness. The jury's note to the trial court stated:

{¶ 92} "Juror realized during the testimony that he was familiar with Blake Thompson. Blake resided at the same complex (apt) within the last year. Juror did not know his name. Juror feels uncomfortable with possibility of defendants receiving a guilty verdict. Blake does recognize Juror as he has spoken to him in Hallway."

{¶ 93} After receiving this note, the trial court spoke to the juror in question. He stated that he recognized "quite a few of the audience members" and was feeling "paranoid" about the possibility that he may be retaliated against if there was a guilty verdict. He stated that he voiced these concerns to the other jurors. However, when asked by the court whether he could put these concerns aside and decide the case based on the available evidence, the juror stated that he could do so. After the trial court questioned the juror, defense counsel objected, claiming that he believed the jury was no longer competent to give a verdict. Robinson claims the trial court was obligated to question each juror regarding whether this information would influence their decision, which it did not do.

{¶ 94} "An accused is entitled to a trial before an impartial, unprejudiced, and unbiased jury." *State v. Daniels* (1993), 92 Ohio App.3d 473, 486. This right is guaranteed by both the Ohio and United States Constitutions. *State v. Jaryga*, 11th Dist. No.2003-L-023, 2005-Ohio-0352, at ¶ 72. A jury's verdict must be based solely on the evidence and argument presented in open court, not on any outside influence. *Patterson v. Colorado* (1907), 205 U.S. 454, 462; *see also Smith v. Phillips (*1982), 455 U.S. 209, 217 ("Due process [requires] a jury capable and willing to decide the case solely on the evidence before it.").

*16 {¶ 95} This and other district courts of appeals have, in the past, presumed prejudice when a criminal defendant has proven juror misconduct. *See State v. Hood* (1999), 132 Ohio App.3d 334, 338; *State v. Spencer* (1997), 118 Ohio App.3d 871, 873; *State v. King* (1983), 10 Ohio App.3d 161, 165. However, the Ohio Supreme Court specifically rejected a presumption of prejudice in this situation in *State v. Keith*, 79 Ohio St.3d 514, 526, 1997-Ohio-0367, when it "reaffirmed a long-standing rule that a court will not reverse a judgment based upon juror misconduct unless prejudice to the complaining party is shown." *See also State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, at ¶ 42, 45 ("[T]he party complaining about juror misconduct must establish prejudice."). Thus, the party making a claim of juror misconduct must first prove misconduct and then prove that they were prejudiced by that misconduct. *Jargya* at ¶ 75.

{¶ 96} Trial courts are given broad discretion when dealing with allegations of juror misconduct. *Keith* at 526-527. Thus, its decision when faced with such allegations must be reviewed for an abuse of discretion. *Id.* at 528. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it

36

implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157.

{¶ 97} Robinson argues that the juror was biased because he was concerned for his safety if the jury rendered guilty verdicts and we agree that is not ideal for a juror to have these concerns when deciding a defendant's guilt. However, "[a] juror's concerns for safety, standing alone, are not sufficient to warrant a new trial." *State v. Garcia*, 8th Dist. No. 79917, 2002-Ohio-4179, at ¶ 86. The party alleging juror misconduct must still prove bias. *Id*. Thus, the fact that a juror worked in a high-crime area and was afraid the defendant's family knew him did not prove that he was biased. *Id*. Likewise, the fact that jurors felt like they were followed when out to lunch and were concerned about the defendants' access to the personal information on the jury questionnaires did not prove bias. *Daniels* at 487.

{¶ 98} We have a hard time understanding how the juror's concerns for his safety if he returned a guilty verdict were likely to prejudice him against Robinson. His concerns, if they did influence him at all, would have made him more likely to find Robinson not guilty, rather than guilty. Furthermore, the juror in question told the judge that he could decide the case based on the facts presented at trial, even after bringing his concerns to the trial court's attention.

{¶ 99} Nevertheless, we must review the trial court's decision not to grant a mistrial for an abuse of discretion. When applying this standard of review, we may not substitute our judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621. Thus, even if the juror's statements raised some doubts about his ability to base his judgment solely on the facts in evidence, we must defer to the trial court if its decision is reasonable. This is especially true in situations like this, where the trial judge is best able to view the people involved and observe their demeanor, gestures and voice inflections, and use such observations in deciding on an appropriate course of action. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80. We cannot say, in this case, that the trial court's decision not to grant a mistrial was so unreasonable that it amounts to an abuse of discretion.

*17 {¶ 100} Finally, Robinson suggests that the trial court should have conducted a more thorough investigation into juror bias by questioning each

juror individually to see if the juror's concerns affected them in any way. "[T]he scope of voir dire is within the discretion of the trial court and varies depending on the circumstances of each case." *State v. Williams*, 79 Ohio St.3d 1, 5, 1997-Ohio-0407. In this case, the trial court spoke to the juror in question about his concerns. He then told the jury as a whole that the matter had been dealt with.

{¶ 101} The trial court is not obliged to question every juror about their ability to act as an unbiased juror merely because of an incident like this. Instead, its obligation is to reasonably ensure that the jury will not consider these facts in its deliberations. We believe the trial court's actions were reasonably aimed at achieving this goal. Accordingly, the trial court did not abuse its discretion by not questioning each juror, especially in the absence of a request to do so by the defense.

{¶ 102} For these reasons, the arguments within Robinson's fifth assignment of error are meritless.

*State v. Robinson*, 2007 WL 1976578, at *15-17.

As the return points out, the standard for reviewing this type of claim when it is made in a habeas corpus petition is set forth in *Zuern v. Tate*, 336 F.3d 478 (6th Cir. 2003). There, the court identified a number of considerations which are relevant, including whether the trial court held a hearing and whether the defendant is able to prove actual bias. The court made it clear that bias is not presumed under these circumstances. It is undisputed that the trial court held a hearing here, and questioned the juror extensively, eventually obtaining an assurance from the juror that he could put his safety concerns (which related to the possibility that the jury would return a guilty verdict) out of his mind and decide the case based on the evidence. Thus, the only question before this Court is whether the state court of appeals unreasonably determined that petitioner had not shown

38

actual bias.

First, the trial court was permitted to accept the juror's statements that he could be fair and impartial if those statements were found credible, which, in this case, they apparently were. *See, e.g., United States v. Pennell*, 737 F.2d 521, 533 (6th Cir. 1984).  There is also a presumption that jurors follow instructions from the trial court, such as the instruction to decide the case impartially based on the evidence. *See, e.g. United States v. Rodgers*, 85 Fed. Appx. 483, 486 (6th Cir. January 6, 2004).  A trial judge's finding, after due inquiry, that there is no actual bias - which is "a state of mind prejudicial to a party's interest," *see United States v. Haynes*, 398 F.2d 980, 984 (2d Cir. 1968) - is also a factual finding to which the federal courts, in the context of habeas corpus, must ordinarily defer. *See, e.g., Mason v. Mitchell,* 320 F.3d 604, 636 (6th Cir. 2003).  Given all of this, the state court's determination that petitioner did not make an adequate showing of actual bias against him based on the juror's expressed concern for his safety should a guilty verdict be returned is not an unreasonable application of federal law.  Because "'neither the reasoning nor the result' of the decision of [the state appellate court] was contrary to federal precedent," *see Strickland v. Pitcher*, 162 Fed.Appx. 511, 519 (6th Cir. January 10, 2006), *quoting Dennis v. Mitchell*, 354 F.3d 511, 517-18 (6th Cir. 2003), this Court cannot grant habeas corpus relief on the basis of the claim raised in Ground Four.

## VII.  RECOMMENDATION AND ORDER

Based on the foregoing, it is **RECOMMENDED** that petitioner's motion to stay or

dismiss (#14) be **DENIED** and that Grounds One through four of the petition be **DISMISSED**.  It is further **ORDERED** that, within twenty-one days, respondent file a supplemental return of writ addressing Grounds Five and Six of the petition, to which petitioner may reply within twenty-one days of its filing.

## VIII.  PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge

40