**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SHANE ROBINSON,**                              **CASE NO. 2:10-CV-0503**

      **Petitioner,**

**v.**                                                            **JUDGE MICHAEL H. WATSON**
                                                                 **Magistrate Judge Kemp**
**WARDEN, MANSFIELD CORRECTIONAL**
**INSTITUTION,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner Shane Robinson, a state prisoner, has filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. In a Report and Recommendation filed on August 4, 2011, the Court recommended that the claims raised in grounds one through four of the petition be dismissed. The Court also ordered respondent to file a supplemental return of writ addressing the claims raised by petitioner in grounds five and six of the petition.

Respondent filed a supplemental return on August 25, 2011. Petitioner moved for and was granted an extension of time to file a reply, but he did not file one. The Report and Recommendation was subsequently adopted without objection and claims one through four were dismissed. This Report and Recommendation will address claims five and six of the petition. For the following reasons, it will be recommended that the remaining claims be dismissed.

## I. PROCEEDINGS IN THE STATE COURTS

The course of the proceedings in the state court are set forth in detail in the prior Report and Recommendation. For purposes of claims five and six, which assert multiple claims of ineffective assistance of counsel and a *Brady* claim (*see Brady v. Maryland*, 373 U.S. 83 (1963)) involving the alleged failure to disclose exculpatory evidence in the form of a deal allegedly offered to a key prosecution witness in exchange for his testimony, the relevant portion of the state court proceedings is as follows.

After petitioner was convicted of aggravated murder, murder, complicity to commit murder, felonious assault, and complicity to commit felonious assault, all accompanied by firearm specifications, he appealed his conviction to the Ohio Court of Appeals for the Seventh Appellate District. One of his nine assignments of error dealt with the issue of ineffective assistance of counsel. Although not all of the different instances of ineffective assistance of counsel which petitioner raises in his fifth claim in this Court were raised by him as part of his direct appeal, the state court of appeals did address several instances of alleged ineffective assistance of counsel, including petitioner's claim that his counsel operated under a conflict of interest because he also represented petitioner's co-defendant, Kelly Carter, and the prosecution offered Mr. Carter a plea bargain in exchange for his agreement to testify against petitioner - an offer which Mr. Carter refused. The assignment of error relating to ineffective assistance of counsel, as well as all of petitioner's other assignments of error, were overruled and his conviction and sentence were affirmed. *See State v. Robinson*, 2007

2

WL 1976578 (Jefferson Co. App. July 5, 2007).  The Supreme Court of Ohio did not

accept his appeal of that decision, finding that it did not involve any substantial

constitutional question.  *See State v. Robinson*, 116 Ohio St.3d 1440 (2007)(Table); *see also*

Return of Writ, Exhibit 12.

   While his appeal was pending, petitioner, also acting through counsel, filed a

petition for post-conviction relief pursuant to Ohio Revised Code §2953.21, raising other

instances of ineffective assistance of counsel as well as his *Brady* claim.  The trial court,

after holding a hearing on the claims, overruled the petition.  That order was also

affirmed by the Seventh District Court of Appeals.  *See State v. Carter, et al.*, 2008 WL

5228925 (Jefferson Co. App. December 15, 2008).  The Ohio Supreme Court did not

accept petitioner's appeal of that decision, declining to do so in an entry filed on June 3,

2009.  *See* Return of Writ, Exhibit 25.  It appears that petitioner appropriately presented

and exhausted all of the claims which constitute his fifth and sixth grounds for relief in

this Court, and respondent does not argue otherwise.

## II.  THE FACTS OF THE CASE

   The facts of this case are set forth in the Seventh District Court of Appeals'

decision in *State v. Robinson*, 2007 WL 1976578, *1 (Jefferson Co. App. July 5, 2007).

That court recited the facts as follows.

   {¶ 2} On August 5, 2001, Xuan Sayles broke into Robinson's
   apartment, beat Robinson's stepfather, Vernon Thurman, shot Robinson's
   brother, Shiraz, and robbed the apartment. Xuan Sayles is a cousin of
   Terrell Sayles and [Alfred] Wade [Jr., the victim].  Robinson was upset
   about the robbery and the assault on his brother and he and his friend,

Kelly Carter, believed that Terrell and Wade either had something to do with the robbery or had some form of control over Xuan. During the course of the month of August 2001, many people witnessed a rising in tensions between these two groups and on many occasions, Robinson and Carter stated that they wanted both to be repaid for what they lost in the robbery and revenge for the shooting of Robinson's brother.

{¶ 3} On August 27, 2001, Robinson and Carter were at a bar in Steubenvile, Ohio, the Safari Lounge, with a group of their friends. Wade was also at the Safari Lounge with a group of his friends. Robinson and Carter left the Safari Lounge before Wade and a mutual friend warned Wade that he had a feeling that Carter and Robinson may do something bad that night. When Wade drove home in the early hours of August 28, 2001, he was met by Carter and Robinson. He got into an altercation with them and they shot him multiple times. Wade was dead by the time emergency medical personnel responded to the scene.

{¶ 4} There were three eyewitnesses to the shooting, Demetrius Birden, a cousin of Wade's who was later murdered in an unrelated incident, Carl Williams, and Tina, an unidentified Caucasian girl. Williams, a convicted felon who was testifying in an attempt to cooperate with federal authorities, testified that he saw the entire altercation in front of Wade's home.

## III.  THE REMAINING CLAIMS

The petition raises the following claims as grounds five and six:

**GROUND FIVE: When my trial attorney (1) represented both myself and my codefendant, Kelly Carter, (2) failed to seek severance of defendants, (3) failed to object to other acts and hearsay evidence, (4) failed to request limiting instructions, (5) failed to request an instruction for a lesser included offense, and (6) failed to object to the prosecutor's improper closing argument, he provided constitutionally ineffective assistance.  Consequently, I am now held in violation of my right to the effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth**

**Amendments to the United States Constitution**.

Supporting facts: Trial counsel represented both Kelly Carter and myself at a joint trial. Trial counsel did not request severance on my case from my codefendant's, despite a plea offer in his case and statements of my codefendant that were improperly used against me at trial; that my codefendant wanted to kill everyone in the victim's circle of friends, was angry about the shooting of my brother, and wanted to get even. My trial counsel failed to request an instruction on the lesser included offense of voluntary manslaughter. The other claim relater (sic) to trial counsel's failure to object to the fact noted in the prior grounds.

**GROUND SIX: When the State failed to disclose an agreement (1) to nolle prosequi the pending criminal charges of the only eyewitness in my case and (2) to provide a letter to that eyewitness' federal sentencing judge in exchange for cooperation and testimony my (sic) another criminal case, the State violated its obligation to disclose discoverable material and violated my due process rights. Consequently, I am now held in violation of my due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.**

Supporting facts: The prosecutor provided a letter to the trial court explaining that an agreement existed between the State and Carl Williams to drop his local charges in exchange for his favorable testimony in Mr. Robinson's case and, Mr. Williams' guilty plea and prison sentence in his federal case. Officer Hanlin's testimony impeached the prosecutor's testimony. The prosecutor had testified, that he planned to

nolle prosequi Mr. Williams' charges because he could not be successfully prosecuted.

It is respondent's position that both of these claims lack merit.

## IV. MERITS REVIEW

### A. Ground Five

In ground five, petitioner raises a claim of ineffective assistance of trial counsel. As noted above, there are multiple sub-parts to this claim, some of which were raised on direct appeal, and some of which were raised in his post-conviction petition. The Court begins its discussion with the claims that were raised on direct appeal. The state court of appeals dealt with those claims in the following way:

{¶ 110} In his seventh assignment of error, Robinson argues:

{¶ 111} "The Appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution due to trial counsel's conflict of interest in representing the Appellant and his codefendant at trial; his failure to seek severance of defendants; his failure to object to other act and hearsay evidence; his failure to request limiting instructions of law; his failure to request instruction for inferior degree offense; and his failure to object to the prosecutor's improper closing argument."

{¶ 112} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. *State v. Smith* (1985), 17 Ohio St.3d 98, 100. When reviewing whether counsel's performance was ineffective, courts must refrain from second-guessing strategic decisions of trial counsel. *State v. Sallie*, 81 Ohio St.3d 673, 674, 1998-Ohio-0343. Ineffectiveness is demonstrated by showing counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 156. To establish prejudice, a defendant must show there is a

reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. *Strickland* at 694. A reasonable probability must be a probability sufficient to undermine confidence in the outcome of the case. *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The defendant bears the burden of proof in demonstrating ineffective assistance of counsel. *Smith* at 100.

{¶ 113} Each of Robinson's claims of the ineffective assistance of counsel will be addressed separately.

Conflict of Interests

{¶ 114} In this case, the same defense counsel represented both Carter and Robinson at their joint trial. Prior to trial, the State offered Carter a plea agreement, which was contingent upon Carter's agreement to testify against Robinson. At two hearings, the trial court inquired into whether Carter wanted to discuss the plea offer with separate, court-appointed counsel. Each time, Carter refused. Robinson contends that defense counsel had an actual conflict of interest once this offer was made and that prejudice is presumed once an actual conflict of interest existed.

{¶ 115} In cases of potential conflict of interest resulting from one attorney representing co-defendants, the United States Supreme Court has held that dual representation is not a per se violation of due process and, in some cases, it may be preferable to launch a common defense against a common attack. *Holloway v. Arkansas* (1978), 435 U.S. 475, 482-483. However, the possibility of a conflict of interest exists in every instance of multiple representation. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 348.

{¶ 116} Both defense counsel and the trial court have an affirmative duty to ensure that conflicts do not interfere with a defendant's representation. *State v. Dillon*, 74 Ohio St.3d 166, 167-68, 1995-Ohio-0169. If defense counsel recognizes a potential conflict in his representation of both clients, he should timely object to his dual representation and move the court to withdraw from representing at least one of the two defendants since he "is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *Holloway* at 485. If an attorney makes such an objection, the trial court must either appoint separate counsel or "take adequate steps to ascertain whether the risk [of conflict] was too remote to warrant separate counsel." *Id.* at 484. Failure to make such an inquiry when faced with a timely

7

objection deprives the defendant of his constitutional guarantee of effective assistance of counsel. *Id*. Consequently, when a court requires joint representation over objection without making sufficient inquiry, prejudice is presumed, and reversal is required. *Id*. at 488.

{¶ 117} In some cases, neither counsel nor defendant raises an objection to the joint representation. In those cases, "[a] trial court is not constitutionally mandated to inquire of criminal co-defendants whether they wish to be jointly represented by the same counsel." *State v. Manross* (1988), 40 Ohio St.3d 180, syllabus. A trial court's duty to inquire only arises when it "knows or reasonably should know that a particular conflict exists * * *." *Id*. at 181. Absent any indication to the contrary, a trial court may assume that either the joint representation presents no conflict or that the lawyer and clients have knowingly accepted the risk of any conflict that may exist. *Cuyler* at 347. In those situations where no objection is raised to the trial court regarding the joint representation, the defendant's conviction will only be reversed if he "shows that an actual conflict adversely affected counsel's representation of said defendant." *Manross* at syllabus; *Cuyler* at 348.

{¶ 118} Robinson claims that a court must presume prejudice when there is an actual conflict of interest. However, this is not what the caselaw actually says. Instead, prejudice is presumed only if the defendant can show the conflict adversely affected counsel's representation of said defendant. *See Cuyler* at 348-350.

{¶ 119} In this case, the prosecution's plea offer created an actual conflict of interest between Carter and Robinson, since a condition of that offer was that Carter testify against Robinson. However, if (sic) this conflict of interest did not adversely affect Robinson because Carter ultimately decided not to accept the plea agreement. The actual conflict which existed between Carter and Robinson disappeared once Carter turned down the offer. Counsel's dual representation of Carter and Robinson did not adversely affect counsel's representation of Robinson.

Failure to Seek Severance

{¶ 120} Robinson next argues that his counsel was ineffective for failing to request separate trials for Carter and Robinson. He claims that counsel's ineffectiveness in this regard allowed damning evidence against Carter to be used against him as well. Joinder is governed by R.C. 2945.13, which provides as follows:

{¶ 121} "When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately."

{¶ 122} The law favors joinder because a single trial will conserve time and expense and may minimize the potentially disparate outcomes that can result from successive trials before different juries. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 86-87; *State v. Torres* (1981), 66 Ohio St.2d 340, 343; *State v. Thomas* (1980), 61 Ohio St.2d 223, 225. However, the interest in joint trials is not unrestricted. Crim.R. 14 allows a trial court to sever the defendants or provide other relief in the interest of justice if a defendant can demonstrate that he is prejudiced by joinder with other defendants charged in the indictment. Severance may be warranted if the trial court finds a serious risk that a joint trial would compromise a specific right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence. *United States v. Zafiro* (1993), 506 U.S. 534, 539.

{¶ 123} Robinson argues that joinder of the trials allowed evidence which was inadmissible against him, namely, Carter's prior brandishment of a firearm and threats to Wade, to be used against him. However, this evidence was, for the most part, cumulative of other evidence already introduced. Many witnesses testified that tensions had been rising between Robinson and Carter on one side and Sayles and his friends on the other, with threats being made by both Carter and Robinson. Many witnesses testified that they had seen Carter with a firearm. Thus, the fact Carter brandished a firearm and/or threatened Wade did not add much to the State's overall evidence.

{¶ 124} In conclusion, counsel was not ineffective for failing to request that the trial be severed. Robinson's arguments to the contrary are meritless.

Failure to Object to Hearsay Evidence

{¶ 125} Robinson next argues that defense counsel was ineffective for failing to object to the admission of statements made by Carter as substantive evidence against him. This argument is similar to the one addressed in Robinson's second assignment of error. For the reasons given in that assignment of error, Robinson's arguments in this regard are meritless.

Failure to Object to Prosecutorial Misconduct

{¶ 126} Robinson's final argument within this assignment of error is that his counsel was ineffective for failing to object to the instances of

prosecutorial misconduct he raises in his fourth assignment of error. However, for the reasons given above, it appears that this alleged misconduct was either not misconduct or did not affect Robinson's substantial rights. Accordingly, Robinson's arguments in this regard are meritless.

*State v. Robinson*. 2007 WL 1976578 at *18-21.

The standard which the Court applies to this and other claims which are evaluated on their merits comes from the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under that statute, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. To that end, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (1) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States District Court for the Western District of Michigan has summarized this standard as follows:

> [A] decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable

10

facts." *Id.* at 413. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state court's adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Further, the federal habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.*

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006), *citing Williams v. Taylor*, 529 U.S. 362 (2000).

There is no question that the law relating to a claim of ineffective assistance of counsel is clearly established. The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 697. Because the petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland*, 466 U.S. at 697.

The Court need not discuss in detail a number of petitioner's claims concerning ineffective assistance of counsel. As the state court of appeals found, his claims relating to counsel's failure to object to hearsay and other acts evidence, and to certain statements made by the prosecutor, could not have constituted ineffective assistance of counsel because such objections would have been meritless. That court found specifically that petitioner was not prejudiced by the introduction of the testimony in question or by the prosecutor's remarks. Although it appears not to have addressed separately petitioner's claim that his attorney was ineffective for failing to request an instruction on the lesser-included offense of voluntary manslaughter, the court of appeals considered the trial judge's failure to give such an instruction as a separate assignment of error, and found that the evidence did not warrant the giving of such an

instruction. As to all of these matters, the state court of appeals found, either explicitly or implicitly, that the prejudice prong of *Strickland* had not been satisfied.

Petitioner's first three grounds for relief asserted in his habeas corpus petition raised issues concerning the admission of hearsay and other bad acts evidence and concerning alleged prosecutorial misconduct. In the prior Report and Recommendation, this Court found two of these claims - those relating to the introduction of other bad acts evidence and to prosecutorial misconduct - to be without merit. It follows from that determination that counsel could not have been constitutionally ineffective for failing to object to the introduction of such evidence or the prosecutor's remarks because that failure to object did not prejudice petitioner.

As to the claim relating to the introduction of hearsay evidence, this Court found that claim to have been waived for habeas corpus review by virtue of counsel's failure to object. The state court of appeals reviewed the merits of the claim, but only for plain error. It found no plain error because only one of the challenged statements - all of which were made out of court by petitioner's co-defendant, Kelly Carter - was improperly admitted, and the admission of that statement was harmless error because of the other extensive evidence of petitioner's guilt. The other statements were all descriptive of Mr. Carter's state of mind and did not tend to show petitioner's involvement in the murder, and were therefore admissible under the hearsay exception permitting such statements to be used as evidence.

As to all of these matters, the state court correctly identified *Strickland* as

controlling precedent, and correctly understood *Strickland* to require a showing of prejudice in order for a claim of ineffective assistance of counsel to be made out. Thus, the only question for this Court is whether the state court's application of *Strickland* to these facts was unreasonable.

For reasons similar to those expressed by the state court of appeals, this Court cannot make such a finding. As to counsel's failure to object either to the other bad acts evidence or the prosecutor's statements, as noted, this Court has found petitioner's independent claims raising those matters to be meritless, and agrees that counsel's failure to object to this evidence was not prejudicial - or at least that a finding to that effect is not an unreasonable application of the prejudice prong of *Strickland*. As to the hearsay statements, the state court of appeals reasonably concluded that most of the statements pertaining to Mr. Carter's state of mind were not hearsay and did not in any way implicate petitioner in the crime, so that any objection to those statements would not have been sustained.

The only statement that the state court of appeals believed to have been admitted in error - and which therefore might not have come in had counsel made a timely objection - was a statement which Mr. Carter allegedly made on the night of the shooting that he wanted to kill everyone in the victim's circle of friends. This statement also described Mr. Carter's state of mind and, as to him, was admissible, but the state court of appeals concluded that because it tended to incriminate petitioner as well, although in only an indirect way, it should not have been admitted against him.

Nevertheless, the court concluded that any error as to the admission of this statement was harmless because there was extensive evidence about the bad feelings between petitioner, Carter, and the victim and his friends, including the prior relationship between all of them, and there was eyewitness testimony linking petitioner to the shooting. In that court's view, the admission of Mr. Carter's statement did not materially affect the outcome of the trial.

Again, this Court cannot find that determination to have been unreasonable. The federal standard for evaluating a finding of harmless error is set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Under *Brecht*, an error is not harmless if it "ha[s] substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 623. A state court's determination of harmless error, if challenged in a federal habeas corpus action, must be sustained unless the state court has unreasonably applied the *Brecht* standard. *Vazquez v. Jones*, 496 F.3d 564 (6th Cir. 2007).

Here, a reasonable jurist could well have concluded that in light of the other evidence admitted properly at trial, the fact that Mr. Carter expressed a desire to kill the victim and his entire group of friends, said in the presence of petitioner, did not substantially affect the jury's verdict. The jury had already heard a substantial amount of evidence about the background of the feud involving the victim, his friends, and petitioner, and it is unlikely that the additional evidence provided by Mr. Carter's statement added anything significant to the jury's understanding of that issue. Although the eyewitness testimony is not, as discussed later, completely free from

doubt, the Court agrees that the cumulative testimony about petitioner's involvement in the shooting was substantial enough to make the admission of this one additional piece of circumstantial evidence harmless. Thus, the state court of appeals did not unreasonably deny petitioner relief on this portion of his ineffective assistance of counsel claim.

The other instances of ineffective assistance of counsel addressed in the context of petitioner's direct appeal relate to counsel's failure to request an instruction on the lesser-included offense of voluntary manslaughter and to request a severance of the trial, and the alleged conflict of interest which developed when the state offered Mr. Carter a plea bargain in exchange for his testimony against petitioner. The Court will examine each of these claims in turn.

As to the claim relating to the severance of petitioner's case from Mr. Carter's case, the state court of appeals summarily denied petitioner's claim of ineffective assistance of counsel because the only prejudice which petitioner identified was the admission of Mr. Carter's hearsay statements in his trial and evidence that Mr. Carter had brandished a weapon. The court of appeals found that, with the exception of the statement discussed above, none of these matters tended to implicate petitioner in the shooting, and as to that statement, its admission was harmless error. Thus, applying state law to the issue of whether a severance would have been appropriate had counsel requested it, the state court of appeals found that any evidence relating solely to Mr. Carter did not significantly add to the evidence against petitioner, and that he was

therefore not prejudiced by the holding of joint trials. In reaching that conclusion, the state court of appeals relied in part on the Supreme Court's decision in *United States v. Zafiro*, 506 U.S. 534 (1993).

In *Zafiro*, the Supreme Court was asked to adopt a "bright-line" rule that in any case involving multiple defendants, if two or more of them present mutually antagonistic defenses (essentially defenses which, if accepted by the jury, would require the conviction of one defendant and the acquittal of another), a severance should always be ordered. The Supreme Court refused to do so, holding that a severance should be granted under such circumstances "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 539.

The state court of appeals did not apply this test unreasonably. The few instances of prejudice which petitioner has claimed were, as that court found, either not improperly prejudicial, or were cumulative and therefore harmless. As the Court of Appeals noted in *United States v. Moore*, 917 F.2d 215, 220 (6th Cir. 1990), it is a defendant's burden to show "compelling prejudice" in order to obtain a severance when the basis of such a request is the admission of allegedly harmful statements of co-defendants or the "spill-over" effect of evidence of a co-defendant's guilt. The state court of appeals did not unreasonably conclude that petitioner could not have met that burden here even had counsel requested a severance. There is no argument that his and Mr. Carter's cases were improperly joined at the outset, and given the substantial

amount of overlapping evidence, such an argument could not have been made plausibly. Given that counsel could not have successfully objected to most of the challenged evidence because it was not prejudicial to petitioner, it is even less likely that counsel could have relied on such evidence, or its potential prejudice, as the basis of a motion for a severance. Therefore, there is no merit to this portion of petitioner's ineffective assistance of counsel claim.

The next instance of ineffective assistance of counsel relates to the failure to request an instruction on voluntary manslaughter. The state court of appeals did not specifically address this claim under the theory that counsel was ineffective for failing to request such an instruction. Rather, it reviewed the claim on the merits and rejected it on the basis that the evidence did not support such a claim. Petitioner's defense at the trial was not that he committed the murder under the influence of emotion or strong provocation, but that he was not present at all. Further, the alleged provocation for the murder occurred at least a month before the murder was committed. Therefore, the state court concluded that an instruction on voluntary manslaughter would not have been consistent with either the facts of the case or petitioner's defense.

Given the fact that the state court of appeals reviewed this claim on its merits, and did not review it simply for plain error, it is hard to argue that counsel was ineffective for failing to ask for an instruction on lesser-included offenses. Had he done so, and had the trial court declined to give the instruction, petitioner's remedy would have been to seek direct review of that decision. He obtained exactly the same level of

review as if counsel had asked for the instruction. Therefore, it does not appear that he was prejudiced by counsel's failure. Further, the state court of appeals determined that such an instruction should not have been given under the facts of this case, making it unlikely that the trial court would have agreed to instruct the jury on voluntary manslaughter even had counsel asked for that instruction. Finally, the failure to request instructions on lesser included offenses is ordinarily a matter of trial strategy. *See, e.g., Harrop v. Sheets*, 430 Fed. Appx. 500 (6th Cir. July 20, 2011). As *Harrop* also noted, in order to demonstrate prejudice, a defendant would have to show not only that such an instruction would have been given if requested, but a substantial likelihood that the jury would have acquitted the defendant of more serious charges had the jury been allowed to consider the lesser-included offense. Certainly, petitioner has not made such a showing here, nor did he do so as part of the state court proceedings. The state court of appeals therefore did not unreasonably conclude that this claim lacked merit.

The last instance of ineffective assistance of counsel which petitioner raised on direct appeal was his claim that counsel operated under a conflict of interest once the State offered to allow Kelly Carter to plead to a reduced charge in exchange for his testimony against petitioner. At least the way this argument was phrased in the state courts, petitioner claims that when there is an actual conflict of interest, prejudice is presumed, and that he was consequently prejudiced here. The state court of appeals disagreed, holding that under the Supreme Court's decision in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), prejudice is presumed only when counsel is laboring under an actual

19

conflict of interest, and that petitioner's counsel never had such a conflict as it related to his representation of the petitioner's interests.

Like this case, *Cuyler* involved an attorney who represented multiple defendants at the same trial. There, the Supreme Court rejected any notion that multiple representation always presents a circumstance where ineffective assistance of counsel or prejudice to the defendants is presumed. Instead, it held that in such cases, a defendant is entitled to an opportunity to show that his interests are being represented inadequately, and that if no objection is made to the joint representation, the defendant must later "demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348. Thus, although "unconstitutional multiple representation is never harmless error," *id*. at 349, unless a defendant can show "that his counsel actually represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance of counsel." *Id*.

Here, the state court of appeals found that petitioner had not established that his counsel ever developed an actual conflict of interest as it pertained to his representation of petitioner, concluding that any potential conflict of interest created by the State's offer to Kelly Carter "disappeared" once Mr. Carter turned down the plea bargain. Certainly, had counsel actively advised Mr. Carter to accept the plea bargain, that would have placed him in direct conflict with petitioner's interest in not having Mr. Carter be a witness against him. However, there is no evidence that counsel encouraged Mr. Carter to accept the deal; in fact, the discussions held on the record at

trial, and which are also a part of the record in this Court (they are attached to the supplemental return) indicate just the opposite. They show that counsel encouraged Mr. Carter to talk to a different attorney to evaluate the benefits of the plea bargain, and Mr. Carter both signed a statement and stated on the record that he did not want to accept it. The trial judge also offered to permit both petitioner and Mr. Carter to consult, for free, with another attorney about how the offer might affect each of their interests, and both of them declined that offer. Nothing connected with the offer or counsel's representation of Mr. Carter's interest in either accepting or rejecting the plea bargain appears to have prejudiced petitioner in any way, or affected counsel's ability to continue to provide him with conflict-free representation.

Although it has been held that "negotiating a plea agreement for one client with the condition that he testify against another creates an actual conflict of interest," *Cates v. Superintendent, Indiana Youth Center*, 981 F.2d 949, 955 (7th Cir. 1992), that is not what happened here. Rather, counsel did not negotiate a plea agreement for Kelly Carter based on Mr. Carter's refusal to enter into any kind of plea bargain. There is simply no evidence that because of the plea offer itself, counsel either did, or failed to do, something which affected the way in which petitioner's interests were represented, or that had petitioner obtained separate counsel (which he refused to do), that new counsel would have presented his case differently. It is also worthwhile to note that another Magistrate Judge of this Court has concluded that Mr. Carter, who certainly has a stronger claim than petitioner with respect to any alleged conflict of interest, waived

any conflict, *see Carter v. Warden*, Case No. 2:10-cv-0199 (S.D. Ohio November 7, 2011),

and that there is other authority for the proposition that someone in Mr. Carter's

position can waive this type of conflict. *See, e.g., Henderson v. Smith*, 903 F.2d 534 (8th

Cir. 1990). Under these circumstances, the Court cannot say that the state court of

appeals unreasonably concluded that petitioner did not demonstrate an actual conflict

of interest on the part of his trial attorney or show how his defense was prejudiced by

counsel's representation of both petitioner and Mr. Carter during and after the time that

the State made its offer to Mr. Carter.

The only separate instance of ineffective assistance of counsel raised in

petitioner's post-conviction petition relates to the way in which counsel attempted to

examine the key eyewitness, Carl Williams, about any deal he had cut with the

prosecutor concerning his pending drug charges. As noted above, petitioner claims that

counsel was ineffective in the way that he developed, or failed to develop, the record

about what consideration Mr. Williams might have received in exchange for his

testimony against petitioner.

Part of this claim is premised on the assertion that Mr. Williams had been offered

a deal by the Jefferson County prosecutor under which the prosecutor would drop

pending drug charges against Mr. Williams in exchange for his testimony. As more

fully discussed below, the state courts eventually concluded that no such deal was ever

made or offered. Because this Court must accept that factual determination, petitioner's

counsel cannot have been ineffective for failing to develop the record properly

concerning a non-existent agreement between Mr. Williams and the prosecutor.

The only other issue relating to counsel's examination of Mr. Williams has to do with the plea agreement entered into between Mr. Williams and the United States concerning federal drug charges filed against Mr. Williams in Chicago. It appears undisputed that, in the plea agreement filed in that case, Mr. Carter agreed to cooperate with the State of Ohio by providing complete and truthful testimony if called as a witness in any state proceeding.

Petitioner has not fleshed out this allegation here, and has not filed a reply in support of his petition as to this ground. However, this claim was raised in the post-conviction petition and discussed by the state court of appeals, as follows:

> {¶ 43} In their second assignments of error, appellants argue that they were denied effective assistance of counsel. They assert several instances of alleged ineffectiveness. It should be noted that both appellants were represented by the same trial counsel at their joint trial.

> {¶ 44} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id*. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, 42 Ohio St.3d at paragraph three of the syllabus.

> {¶ 45} Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun* (1999), 86 Ohio St.3d 279, 289, 714 N.E.2d 905. In Ohio, a licensed attorney is presumed competent. *Id*.

{¶ 46} First, appellants contend their counsel was ineffective for failing to proffer for the record several pieces of evidence that they assert would have impeached Williams' credibility. The trial court sustained the prosecutor's objections and limited appellants' attorney on cross-examination of Williams regarding the facts surrounding his federal fraud and conspiracy convictions, his pending state drug charges, and his cooperation in testifying in appellants' case. Appellants argue that their attorney should have proffered Williams' pending state warrant and indictment and his federal plea agreement. Appellants argue that their counsel's failure to proffer these items denied them from successfully arguing to this court in their direct appeals that the trial court's ruling on these matters was in error.

*7 {¶ 47} In ruling on this issue, the trial court found, "[e]vidence that* * * [Williams] had made a plea agreement in Federal Court was before the jury and was available for consideration by them. Evidence of the witnesses [sic.] numerous aliases, social security numbers and dates of birth were also before the jury." The trial transcript supports the court's findings. Williams testified that he was in prison for fraud, conspiracy, and drugs. (Trial Tr. 932). Additionally, appellants' counsel cross-examined Williams regarding his numerous aliases, social security numbers, and dates of birth. (Trial Tr. 934, 935). And Williams testified that he had to come clean about everything he knew as part of his deal with the "Feds." (Trial Tr. 970).

{¶ 48} Additionally, appellants' counsel could not have cross-examined Williams regarding his pending state drug charges because Williams had not been convicted of those charges and had not entered into a deal with the state regarding those charges.

*State v. Carter* 2008 WL 5228925, *6-7.

It appears that the state court rejected any claim of ineffective assistance of counsel, as it related to the federal plea agreement, based on the fact that the jury was informed of the nature and existence of the agreement. If that were so, counsel would have done all he could to place that matter of impeachment before the jury.

24

Mr. Williams answered one question about his federal plea agreement. He explained that he had talked to federal prosecutors and had agreed to accept responsibility, which involved "talk[ing] about anything you was involved in or anything you have knowledge of ..." He further testified that "once I revealed that [i.e. his knowledge of the victim's murder] during that meeting, then I had to come forth with everything. That's — or I wouldn't be accepting my responsibility. That's — that's what the Federal — because I'm under Federal guidelines. So, that's what the Feds — that's how the Feds look at things." (Trial transcript, at 970). In response to follow-up questions from the prosecutor, Mr. Williams testified that this arrangement was part of the sentencing guidelines, and that if he did not fulfill his promise to cooperate, he would not get something he had been promised, although he did not fully explain what that was. He also revealed that he had been cooperating with federal authorities since 1998. In closing argument, counsel attacked his credibility by noting that he was in a federal penitentiary and that he had been helping the federal prosecutors since 1998.

It appears that the only additional action which petitioner's counsel might have taken would have been to introduce the specific language in the plea agreement which required Mr. Williams' complete and truthful testimony in petitioner's case. He undoubtedly failed to do that. But the question is not whether that would have been good trial strategy; the question is whether, in light of the other evidence before the jury, the failure to either introduce or proffer the plea agreement itself prejudiced

petitioner to the point where the outcome of his trial might have been different had counsel acted differently. The state court of appeals clearly believed that it did not, and this Court cannot find that decision to be an unreasonable application of federal law.

Again, determining whether a defendant has been prejudiced by an attorney's failure to introduce specific evidence requires an evaluation of the evidence as a whole. The Court of Appeals has held that "undisclosed impeachment evidence is cumulative 'when the witness has already been sufficiently impeached at trial.'" *Davis v. Booker*, 589 F.3d 302, 309 (6th Cir. 2009), *quoting Brown v. Smith*, 551 F.3d 424, 433-34 (6th Cir. 2008). So, for example, in *Davis v. Booker*, the witness had already been impeached by evidence of his involvement in drug trafficking and the fact that he made prior inconsistent statements. The court concluded that although counsel could have introduced a prior fraud conviction as additional impeachment evidence, in light of what the jury had already been told, the addition of that piece of evidence would not likely have changed the outcome of the trial.

Much the same is true here. The jury was informed that Mr. Williams was in federal custody at the time of the trial; that he was being held on charges of fraud, conspiracy, and drugs; that he had other felony convictions in the past, including armed robbery and attempted murder; that he also had a prior felony drug conviction; that he had used multiple aliases, dates of birth, and social security numbers in the past; that he was a member of a gang in Chicago; that he was actually attempting to engage in, or had engaged in, a drug transaction on the night in question; that he had made no

mention of his having witnessed the murder for more than two years after it happened; and that he only revealed his knowledge after speaking with federal prosecutors and as part of his attempt to get credit for accepting responsibility in his federal drug case. Whatever additional value the actual plea agreement might have had on the jury's view of Mr. Williams' credibility, it was not likely to have been substantial enough to change their verdict - or, at least, the state court of appeals did not unreasonably apply federal law when it concluded that such an influence on the jury's verdict was unlikely. That being so, there is no merit in this final claim of ineffective assistance of counsel.

## B. Ground Six

The evidence at issue in this ground also relates to witness Carl Williams. Again, there appears to be no dispute that Mr. Williams was facing serious drug charges in Jefferson County when he testified at petitioner's trial. Counsel attempted to cross-examine him about those charges and about any plea bargain he may have made in that case (as opposed to his federal case) in exchange for his testimony against both petitioner and Kelly Carter. That effort was not terribly successful. In fact, Mr. Williams denied having entered into any agreement with State authorities about his state drug charges. However, after petitioner's trial, those charges were dropped. In his post-conviction petition, both petitioner and Mr. Carter, who were joint petitioners, claimed that an agreement to drop those charges must have existed given their serious nature and the fact that a prosecutor would not likely have dismissed them for no reason.

After taking extensive testimony from, among other witnesses, the Jefferson County prosecutor, the state trial court found, as a fact, that no agreement had been made between Mr. Williams and the Jefferson County prosecutor concerning his testimony. He therefore denied petitioner's *Brady* claim on grounds that there was no exculpatory information withheld.

The state court of appeals opinion explained the trial court's findings as follows:

> Appellants argue that the trial court should have granted their post-conviction petitions because the state erred in failing to disclose an alleged agreement with witness, Carl Williams, to drop charges against him in exchange for his testimony against appellants. Williams was the state's key witness in appellants' trial who testified that he saw appellants shoot the victim, Alfred Wade, Jr. It was disclosed that Williams was testifying in exchange for leniency in a federal case in Chicago. On March 23, 2007, well after appellants' trial, the prosecutor filed a request to nolle prosequi a pending state drug case against Williams. Appellants argue that the fact that the prosecutor moved to nolle prosequi the charges against Williams is evidence that an agreement existed between Williams and the state whereby the state would dismiss the charges against Williams in exchange for his testimony against appellants.

> In support of their contention that the state had a deal with Williams to testify against them in exchange for the state dropping the drug charges against him, appellants point to the following evidence. First, they point to the request to nolle prosequi Williams' drug case. (Def.Ex.E). In the request, the prosecutor specifically states: "The undersigned is advised, further, that in the event this defendant testified favorably in the above described homicide cases, and that he pleaded guilty in Case # 02CR1092, then pending in the United States District Court, for the Northern District of Illinois, and was sentenced to a term of imprisonment therein, that the State of Ohio would move for a Nolle Prosequi of the case herein."

> Second, appellants point to Prosecutor Thomas Straus's testimony. Straus assumed office in January 2005. Because he was not familiar

with appellants' case, the court appointed Rich Ferro, the prosecutor who had been handling the matter, as special prosecutor for the case, which proceeded in February. Thus, Straus was not involved in any deal that may or may not have been made. Appellants' note that Straus testified that the information he put in the request to nolle prosequi Williams' drug case came from "Somebody," possibly Ferro and one of the detectives on the case. (Tr. 101).

Third, appellants point to the testimony of Detective Jason Hanlin. Detective Hanlin testified that Williams admitted his role in the drug case against him. (Tr. 146). Appellants argue that this was relevant because Straus indicated that one of the reasons for his request to nolle prosequi Williams' case was because there was no evidence on which to proceed.

Fourth, appellants argue that when Williams testified in their trial he had an outstanding warrant for his arrest in the drug case. Yet the warrant was not executed at that time. Appellants contend that this demonstrated that a deal was in place between Williams and the state. Finally, appellants point to a letter from Ferro to the federal judge in Williams' case expressing the state's gratitude to Williams for testifying in appellants' trial.

Appellate review of a trial court's disposition of a petition for postconviction relief is a hybrid presenting mixed questions of law and fact. *State v. Smith* (Sept. 24, 1999), 11th Dist. No. 98-T-0097; *State v. Akers* (Sept. 9, 1999), 4th Dist. No. 98 CA 33. The trial court's factual findings will not be reversed unless they are against the manifest weight of the evidence. Judgments will not be reversed, as being against the manifest weight of the evidence if they are supported by some competent, credible evidence. *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533; C.E. *Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Upon accepting such findings of fact, an appellate court then independently determines the propriety of the trial court's conclusions of law.

In this case, the trial court found that at appellants' trial, Williams denied the existence of any agreement with the state. It further found that appellants failed to produce any credible evidence that there was a plea agreement with the state. It found that there was a plea

agreement between Williams and the federal government but that this agreement was disclosed in discovery. Finally, the court found that no agreement existed between Williams and the state.

The trial court's determination that no agreement existed between Williams and the state is not against the manifest weight of the evidence. In addition to the evidence detailed by appellants above, the following evidence was also presented.

Straus testified that when he filed the request to nolle prosequi Williams' drug case, his facts were not completely accurate. (Tr. 95). He stated that he misspoke in his request because he had not fully digested what had occurred in this case. (Tr. 102). Straus testified that once he had reviewed all of the information in this case, it became obvious to him that Williams did not have an agreement with the state. (Tr. 103). He gave the following narrative of events. Williams was one of four defendants in what was known as the "Greyhound bus" drug case. (Tr. 95). Williams, along with co-defendants, Logan, Vance, and Lofton, were all indicted on the same charges. (Tr. 95-96). Lofton and Logan both entered pleas and received probation. (Tr. 96). The prosecutor then dismissed the charges against Vance. (Tr. 96). These three men then left the area and the former prosecutor did nothing to secure their testimony. (Tr. 96-97). Without the testimony of at least one of the co-defendants, the state could not prosecute Williams successfully. (Tr. 97). Straus stated that he was confused about the state of the Williams drug case and how it related to Williams' federal charges. (Tr. 97). After he filed his request to nolle prosequi Williams' drug charges, he spoke with Ferro. (Tr. 97). He then located a note from Ferro to an assistant prosecutor wherein Ferro advised her that Williams' charges were included in a federal charge as part of the federal agreement. (Tr. 97). Straus stated that when he filed the request to nolle prosequi, he was unsure whether Williams actually got a recommendation for dismissal because he had cooperated in appellants' cases or whether Ferro had been satisfied that the issues raised in Williams' drug case were being adequately handled in the federal case. (Tr. 98). Since that time, Straus stated that he reviewed Williams' federal plea agreement. (Tr. 98). He pointed out that the agreement specifically references Williams' Ohio drug offense. (Tr. 98; Def. Ex. A). Straus stated that he believed that Ferro was satisfied that Williams' drug case should be dismissed because it was addressed in his federal case.

(Tr. 98). Straus testified that he believed that Ferro was satisfied that if Williams testified truthfully in appellants' trial and if Williams' state drug case was wrapped up in his federal case, then Ferro would no longer pursue the drug charges against Williams because Williams would be adequately punished. (Tr. 100).

Straus further stated that in addition to this reason, his other reason for requesting to nolle prosequi the drug case was that after reviewing it with the Steubenville police, he concluded that the evidence did not exist to successfully prosecute the case. (Tr. 99).

Additionally, Detective Jonathan Sowers testified that he had discussed this matter with Straus and conveyed to him that there was no case against Williams to prosecute. (Tr. 126-27, 141). Detective Sowers also testified that in a conversation with Williams, Williams told him that his state drug charges were being handled as part of his federal plea deal. (Tr. 129-30).

This evidence supports the trial court's finding that Williams did not have a deal with the state. This matter turned on Straus's credibility. Determinations of witness credibility are primarily for the trier of the facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. This is because the trier of the facts is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of their testimony. *State v. Wright*, 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶ 11.

Straus's testimony, if believed, demonstrates that no deal existed between Williams and the state. Appellants' strongest argument in support of an alleged deal is the request to nolle prosequi the drug charges against Williams wherein Straus stated that the reason for the motion was that Williams testified favorably in appellants' trial. However, Straus explained himself and this misstatement in his testimony at the post-conviction hearing. He then put his statement on the record that the reason for requesting the nolle prosequi was not because of a deal with Williams in exchange for his testimony, but instead was two part: (1) Williams was already sentenced in federal court, which took into account his drug activity in Ohio; and (2) there was not sufficient evidence on which to prosecute Williams. The trial court believed Straus's explanation.

> Because the trial's court's findings were not against the weight of the evidence, the court properly denied appellants' post-conviction petitions as to this issue. Accordingly, appellants' first assignments of error are without merit.

*State v. Carter*, 2008 WL 5228925, *3-5 (Jefferson Co. App. December 15, 2008).

This exact claim was also raised by Kelly Carter in his federal habeas corpus petition. In the Report and Recommendation issued in that case, Magistrate Judge Abel correctly determined that the key issue here is whether this Court is bound by the factual findings made by the state courts, something required by 28 U.S.C. §§2254(d), (e), unless certain exceptions contained in those statutory sections apply. In particular, the Court must accept those findings unless they are unreasonable in light of the evidence presented at the state evidentiary hearing. *See* 28 U.S.C. §2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

Magistrate Judge Abel concluded that Mr. Carter was unable to meet his burden of showing that the state trial court's determination of the facts was not reasonably based on the evidence presented. This Court finds that petitioner has similarly failed to meet that burden. The state court of appeals opinion recites in detail the testimony on which that finding was based, including the testimony of Prosecutor Straus that there was, in fact, no deal; that when he appeared to have said something contrary, he either misspoke or was mistaken; and that the real reasons behind dropping the drug charges

against Mr. Williams had to do with the strength of the case, and the belief that Mr. Williams would be punished adequately in the federal case.  Like Magistrate Judge Abel, this Court cannot find that the state court's factual finding was unreasonable. That court was permitted to weight the conflicting evidence and to judge the credibility of the witnesses who testified, and it is a rare case in which a federal court, applying the deferential standard set forth in §§2254(d), (e) can overturn such a decision, especially when it is a matter of judging the credibility of the witnesses.  *See, e.g., Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary...").  Because there is no such evidence here, this Court must accept the state court's factual finding that no *Brady* material in the form of an agreement between the Jefferson County prosecutor and Mr. Williams relating to Mr. Williams' testimony at petitioner's trial ever existed.  Absent any *Brady* material, petitioner cannot prevail on a claim that the State improperly withheld such material from him.  His sixth ground for relief is therefore without merit.

## V.  RECOMMENDATION AND ORDER

Based on the foregoing, it is **RECOMMENDED** that grounds five and six be denied on their merits, and that this case be **DISMISSED.**.

## VI.  PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is

33

made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge